IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SAMUEL GOODS, JR., DAISY ELLIS,
JOHNNY GRAY AND GLORIA GRAY,
INDIVIDUALLY AND IN THEIR
REPRESENTATIVE CAPACITY ON BEHALF
OF A CLASS OF ALL PERSONS
SIMILARLY SITUATED                                      PLAINTIFFS

VERSUS                       CIVIL ACTION NO. 5:05cv169-DCB-JMR

HORACE MANN LIFE INSURANCE
COMPANY AND HORACE MANN
EDUCATORS CORPORATION                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Horace Mann Life Insurance Company's Motion to Dismiss for Failure to State a Claim [**docket entry no. 4**] and Horace Mann Educators Corporation's Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim [**docket entry no. 16**]. Having reviewed the motions, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

## FACTS AND PROCEDURAL HISTORY

This action arises out of a dispute concerning a number of life insurance policies issued by the defendant, Horace Mann Life Insurance Company ("HM Life"), to the plaintiffs. Plaintiff Samuel Goods, Jr. ("Goods") purchased a First to Die Joint Whole Life policy from HM Life with an effective date of July 1, 2000.

1

Plaintiff Daisy Ellis ("Ellis") purchased a substantially identical policy with an effective date of December 1, 1992. Plaintiffs Johnny and Gloria Gray also purchased a First to Die policy with an effective date of May 11, 1987.  It is the plaintiffs' contention that HM Life and its agents represented to each plaintiff that he or she was purchasing two separate life insurance policies for each named insured, but that the defendants maintain that each policy would terminate upon the death of the first named insured.  In other words, the plaintiffs believed that each policy granted separate insurance to each of the named joint insureds and that, therefore, the insurance coverage would continue on the survivor after the other insured's death.  According to the plaintiffs, however, the defendants treat the policies, in contravention of the express terms, as single policies issued jointly to the insureds which would terminate completely upon the death of one of the insureds.  The policies state, "Your plan of insurance provides permanent insurance on the lives of two insureds.  While this policy is in force, we will pay the insurance benefits when the first of the joint Insureds dies." (Compl. Ex. 1 at 4.)

The plaintiffs initiated this diversity action on September 7, 2005, alleging breach of contract, fraud, tortious misrepresentation and other related counts.  Within the complaint is also a petition for class action certification wherein the

plaintiffs seek to bring the action in their representative capacity on behalf of a class of all persons similarly situated.[1] (See Compl., ¶95).  All plaintiffs (insureds) are still alive.

On October 19, 2005, HM Life filed the present Motion to Dismiss for Failure to State a Claim, raising a number of justifications for dismissal.  On December 12, 2005, Horace Mann Educators Corporation ("HMEC"), the other defendant in this action, filed a motion to dismiss on the basis that the Court lacks personal jurisdiction over the company, or, alternatively, that it should be dismissed for the same reasons set forth in HM Life's motion.

On June 15, 2006, before ruling on defendants' motions to dismiss, the Court issued a Show Cause Order to establish whether the amount in controversy requirement was met to satisfy diversity jurisdiction.  The Show Cause Order directed plaintiffs to provide a memorandum briefing two issues: (1) what the proper measure of compensatory damages in this action is; and (2) how the plaintiffs are entitled to punitive damages under Mississippi law.

**DISCUSSION**

SUBJECT MATTER JURISDICTION

---

[1] The plaintiffs maintain that HM Life "sold tens of thousands of 'First to Die' joint life insurance policies in Mississippi and elsewhere throughout the United States by representing that two policies existed (i.e., one policy for each insured) when in actuality only one policy existed." (Compl. ¶10.)

3

This Court has a duty to verify the existence of jurisdiction before ruling on defendants' motions to dismiss. Ayers v. 482018-Div "N", 2006 WL 1049042, at *1 (5th Cir. Apr. 20, 2006) (admonishing that courts should always verify existence of jurisdiction). Diversity jurisdiction is satisfied where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332. It is undisputed that complete diversity of citizenship exists among the parties.[2] Whether the amount in controversy requirement is met, however, is a more difficult question.

"[T]he burden of establishing [subject matter jurisdiction] rests upon the party asserting jurisdiction." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). Both compensatory and punitive damages will be considered in determining whether the amount in controversy has been met. Watson v. Shell Oil Co., 979 F.2d 1014, 1021 (5th Cir. 1992). Multiple plaintiffs may not aggregate their respective claims of compensatory damages to satisfy the amount in controversy. Troup v. McCart, 238 F.2d 289, 295 (5th Cir. 1956) (where insureds seek to recover under individual policies, compensatory damages may

---

[2] The plaintiffs are all Mississippi residents. (See Compl. ¶¶2-5.) It is averred in the complaint that HM Life and HMEC are "foreign" companies to Mississippi, both with their principal places of business located in Illinois. (See Compl., ¶¶6 & 7.)

4

not be aggregated to satisfy the jurisdictional amount).  Claims of punitive damages, however, can be aggregated between plaintiffs in the same case to reach the $75,000 requirement.  Allen v. R & H Oil & Gas Co., 63 F.3d 1326, 133-34 (5th Cir. 1995).

Generally, the amount claimed in good faith by the initial pleadings will satisfy the amount in controversy.  See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283 (1938).  "[T]o justify dismissal, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount."  Burns v. Anderson, 502 F.2d 970, 972 (5th Cir. 1974).  While the existence of the amount in controversy is a federal question, "state law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce."  Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1012 (5th Cir. 1979) (reviewing Georgia state law to determine if jurisdictional amount could be satisfied).

   1.  Compensatory Damages

In response to this Court's Show Cause Order instructing plaintiffs to articulate the proper measure of compensatory damages, plaintiffs claim both "loss of bargain" damages and emotional distress damages.  (See Resp. 2-3.)  Plaintiffs allege that they "bargained for" two life insurance policies, i.e., one for each spouse. Plaintiffs further allege that HM Life defrauded

them and anticipatorily breached the contract by HM Life's position that the death benefits are owed only for the first spouse's death rather than for each death. Plaintiffs engaged an expert actuary, William C. Cutlip, to calculate damages. Mr. Cutlip determined damages as follows: (1) Samuel Goods, Jr.'s damages equal $73,801, (2) Daisy Ellis's damages equal $39,367, and (3) Johnny Gray's damages equal 24,587. These figures are based on the "benefit" of the second spouse's death ($100,000 or $50,000) minus the sum of future expected premiums that the survivor will be forced to pay. These figures were not discounted to a present value.[3]

Plaintiffs also claim emotional distress damages. Emotional distress damages are only available where the defendants' conduct "was outrageous, evoked revulsion, done intentionally with a reasonably foreseeable result, and done for the purpose of causing hardship . . . ." Wilson v. Gen. Motors Acceptance Corp., 883 So. 2d 56, 65 (Miss. 2004). To recover emotional distress damages in the absence of some physical injury, defendants must have "intentionally and maliciously sought to do the plaintiff [foreseeable] harm." Sumler v. East Ford, Inc.,

---

[3]It should be noted that since none of the insureds have actually died, Mr. Cutlip's analysis remains quite speculative. Furthermore, since Mr. Cutlip's analysis predicts the "second death benefit" for each plaintiff to accrue in the future, his figures should have been reduced to a present value. One also wonders how these plaintiffs will be injured since, in order to receive the second death benefit, both spouses must be dead.

6

915 So. 2d 1081, 1089 (Miss. Ct. App. 2005); see also Morgan v. Greenwaldt, 786 So. 2d 1037, 1044 (Miss. 2001).  Here, the plaintiffs have failed to point to any conduct on the part of HM Life that was outrageous or that was intentionally and maliciously done to cause plaintiffs hardship.

Plaintiffs' sole authority cited in support of its claim for emotional distress damages is an unreported final judgment out of the Circuit Court of Humphreys County, Mississippi styled Nunaley v. Horace Mann Life Insurance Company, No. 04-0024.  Reliance on Nunaley is misplaced for several reasons.  First, Nunaley is an unreported state trial court opinion that is currently on appeal.  Second, the final judgment only refers to "compensatory damages"; not emotional distress damages.  Third, since only the final judgment was provided to the Court, the factual basis surrounding Nunaley cannot be compared to the current facts.

Moreover, plaintiffs did not allege emotional distress damages in their complaint.  Emotional distress damages are a form of special damages which must be pled with specificity.  See Fed. R. Civ. P. 9(g); Smith v. DeBartoli, 769 F.2d 451, 453 n.2 (7th Cir. 1985).  Here, defendants had no notice of plaintiffs' claim of emotional distress damages until plaintiffs' response to this Court's Show Cause Order.

In light of the foregoing, it is clear that none of the plaintiffs can possibly establish compensatory damages in excess

7

of the jurisdictional requirement.

    2.  Punitive Damages

Plaintiffs claim they are entitled to punitive damages based on HM Life's alleged bad faith breach of contract and various acts of fraud. To recover punitive damages in a breach of contract action, the plaintiff must prove "that the defendant acted with (1) malice or (2) gross negligence or reckless disregard for the rights of others." Watson v. Johnson Mobile Homes, 284 F.3d 568, 571 (5th Cir. 2002); see also Morris Newspaper Corp. v. Allen, 932 So. 2d 810, ¶ 43 (Miss. Ct. App. 2005). A breach of contract will only give rise to punitive damages when that breach rises to the level of an independent tort. Watson, 284 F.3d at 571.

This Court explicitly instructed plaintiffs to brief the Court on "how the plaintiffs are entitled to punitive damages under Mississippi law." (Show Cause Order 9.) Plaintiffs breach of contract claim rests on a theory of anticipatory breach of contract. Instead of showing how HM Life's alleged anticipatory breach is malicious or gives rise to an independent tort, plaintiffs merely state that "[HM Life's] wrongful interpretation/administration of its joint policies amounts to an anticipatory breach of contract." (Resp. 7.) Such a statement, without any showing (or allegation) of malice or gross

8

negligence, cannot give rise to punitive damages in Mississippi.[4] "[P]unitive damages are disfavored under Mississippi law and are reserved for extreme cases and even then should be narrowly applied." Watson, 284 F.3d at 571.

Plaintiffs also allege various fraud based claims against HM Life. These claims are based on fraudulent concealment, intentional misrepresentation, and fraudulent inducement. In Mississippi, to recover punitive damages based on a claim of fraud, the plaintiffs must prove by clear and convincing evidence that "the defendant . . . committed actual fraud." Miss. Code Ann. § 11-1-65; see Community Bank v. Courtney, 884 So. 2d 767, ¶ 35 (2004). An insured who signs an insurance contract is imputed with the knowledge contained in that contract, even if the insured did not read the contract, regardless of any oral misrepresentations made. Rainwater v. Lamar Life Ins. Co., 207 F. Supp. 2d 561, 567 (S.D. Miss. 2002); Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co. Inc., 584 So. 2d 1254, 1257 (Miss. 1991). Therefore, as a matter of law, there is no possibility of recovering punitive damages where the alleged fraudulent concealment or misrepresentation would have been discovered by plaintiffs upon reading the

---

[4] Bad Faith denial of coverage claims, as plaintiffs point out, do often evince malice and therefore give rise to punitive damages. Such is not the case here. In the instant case, there has never been a single death, much less a second death so that bad faith denial of coverage could possibly be an issue.

contract.  Id. (quoting Godfrey, Bassett & Kuykendall Architects, Ltd., 584 So. 2d at 1257.

HM Life's First to Die policy unambiguously reads, "Your plan of insurance provides permanent insurance on the lives of two insureds.  While this policy is in force, we will pay *the* insurance benefits when the first of the joint Insureds dies." (Compl. Ex. 1 at 4.) (emphasis added).  The policy further states, "Within 31 days of an insured's death, the surviving insured may purchase a *new* policy." (Compl. Ex. 1 at 6.) (emphasis added).  The insurance policy's reference to *the* benefits and again to the surviving spouse's right to buy a *new* policy make clear that the policy was intended to provide only one death benefit.  This unambiguous intent would have been easily discernable by anyone reading the contract.  Furthermore, the Mississippi Court of Appeals has recently reviewed these same policies and found them to be unambiguous and "easy to understand."  Evans v. Horace Mann Life Ins. Co., --- So. 2d ---, ¶ 10, No. 2005-CA-00254-COA, 2006 WL 1604463, at *2 (Miss. Ct. App. June 13, 2006); see also Parker v. Horace Mann Life Ins. Co., --- So. 2d ---, ¶ 9, No. 2004-CA-02292-COA, 2006 WL 1320612, at *2 (Miss. Ct. App. May 16, 2006) (holding as matter of law that fraud claim could not succeed since policy was clear and easy to understand).  As such, plaintiffs cannot demonstrate how Mississippi law could entitle them to punitive damages on any of

10

their claims.

It therefore appears to a legal certainty that the jurisdictional bar cannot be met in this case.  Compensatory damages, by way of plaintiffs' own expert's calculations, fall below the jurisdictional threshold.  Plaintiffs failed to show any legal authority that could possibly entitle them to emotional distress damages.  Furthermore, plaintiffs failed to show any possibility for recovering punitive damages under Mississippi law.  See Duderwicz v. Sweetwater Sav. Ass'n, 595 F.2d 1008, 1012 (5th Cir. 1979).

Since diversity jurisdiction does not exist in this case, it must be dismissed.  Accordingly,

IT IS HEREBY ORDERED that the defendants Motions to Dismiss [**docket entry no**. **4** and **16**] are **granted**.

SO ORDERED, this the 25th day of August, 2006.

```
                                    S/DAVID BRAMLETTE
                                    UNITED STATES DISTRICT JUDGE
```